Brown Cab Co., Inc. v. Commissioner.
Brown Cab Co. v. Commissioner
Docket No. 101964.
United States Tax Court
1943 Tax Ct. Memo LEXIS 501; 1 T.C.M. (CCH) 448; T.C.M. (RIA) 43033; January 20, 1943
*501 B. L. Dahlberg, C.P.A., Burwell Bldg., Knoxville, Tenn., and G.E.H. Goodner, Esq., for the petitioner. F. L. Van Haaften, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion [1]
The Commissioner has determined deficiencies in income and excess-profits taxes for the year 1936, in the respective amounts of $3,078.33 and $1,430.44, by reason of his inclusion in petitioner's gross income for the taxable year of the amount of certain debts of petitioner cancelled on December 31, 1936. The question presented for decision is whether or not such cancellation resulted in taxable income to the petitioner, and, if so, to what extent. Findings of Fact Petitioner is a corporation with principal office in Knoxville, Tennessee, engaged in the business of buying, owning and renting taxicabs. Its income tax return for the period here involved was filed with the Collector for the District of Tennessee. All of the stock of petitioner, as well as that of another corporation, the Pryor Brown Transfer Co., was owned by one Pryor Brown, until his death, on August 15, 1936. Thereafter, all the stock of *502 the two corporations, as well as an item of indebtedness in the sum of $2,011.11 owed by the petitioner to Pryor Brown, and an item of $59,000 owed by the Transfer Co. to Pryor Brown, became the property of Charles J. Brown, as sole heir of Pryor Brown, and were owned by him on December 31, 1936. On the same date, petitioner also owed the Transfer Co. the sum of $17,875.00, and the Transfer Co. owed the petitioner the sum of $4,687.55, and also an item of $3,433.00. On December 31, 1936, both the petitioner and the Transfer Co. were unable to pay their debts, and Charles J. Brown decided to cancel the indebtedness of the two corporations to him, and cause the cancellation of their indebtedness to each other, for the purpose of improving their financial condition. Accordingly, the reciprocal debts were cancelled on December 31, 1936, with the exception of the item of $3,433.00 owed by the Transfer Co. to petitioner, which, for some reason not adequately explained by the record remained on the books of petitioner as an account receivable. These transactions resulted in a net cancellation in favor of petitioner in the amount of $15,198.56. At the time of such cancellation the books *503 of petitioner reflected a net worth of $20,337.27, based upon the book value of petitioner's assets. The actual net worth of petitioner, after the cancellation of the foregoing items of indebtedness, based on the fair market value of its assets, and its actual liabilities, including salaries determined to be due its officers for the year 1936 pursuant to authorization of the Board of Directors, was, on December 31, 1936, in the amount of $5,186.15. Before the cancellation in question, petitioner was insolvent. Petitioner's assets at the time of the cancellation in question and their fair market value were as follows: Cash
$ 1,264.03
Pryor Brown Transfer Co.
(account receivable)
3,433.00
John Cox, Agent (equivalent
to a cash account)
625.12
M. C. Reeder
400.00
Cabs
5,475.00
$11,197.15
Petitioner's liabilities immediately after the cancellation in question were in the following amounts: Notes payable
$2,011.00
Salaries payable
4,000.00
$6,011.00
The annual salaries for 1935 and 1936 of officers of petitioner were fixed by Charles J. Brown, president and sole stockholder of petitioner, in the amounts of $1,000 to himself, $500 to petitioner's vice-president *504 and $500 to petitioner's bookkeeper, pursuant to the following authorization contained in the minutes of the Annual Meeting of petitioner's stockholders and directors under date of February 5, 1936: Upon motion of E. F. Wilhoit, seconded by Earl Street and unanimously carried, the officers agreed to serve for the year with the understanding that their salaries would be determined later and based on the results for the year. Opinion KERN, Judge: The petitioner contends that the cancellations of indebtedness here involved were gratuitously made, by a stockholder of petitioner, and constituted, not income but a contribution to capital, under the provisions of Article 22 (a) 14 of Regulations 94. [1]
*505 Respondent takes the position that the cancellations in question were not made by stockholders of petitioner, but were made by the Estate of Pryor Brown, and the Pryor Brown Transfer Co. So far as respondent's contention relates to the Estate of Pryor Brown, we must disagree with it. We have before us no evidence whatever that the Estate of Pryor Brown is in any way connected with this proceeding. We think, on the contrary, the evidence satisfactorily establishes the fact that Charles J. Brown was, on December 31, 1936, the owner of all the stock of petitioner, and of the items of indebtedness originally due his father; and that he gratuitously cancelled the indebtedness of petitioner to him. There does appear to be some confusion in the record concerning the treatment of the debt owed by petitioner to the Transfer Co., which is the other item of indebtedness, the forgiveness of which is also involved in this proceeding. There is some evidence of an intention on the part of Charles J. Brown to acquire and cancel this account, but the facts surrounding the actual method by which the cancellation was accomplished are obscure. However, in view of the result later reached by us in *506 this opinion, it is unnecessary to decide the point. It was definitely established by the record that the item was cancelled; and, as we shall later show, it is immaterial for the purposes of this case, by whom the debt was cancelled. It has been repeatedly held that the application of the regulation invoked by petitioner must be limited to items of indebtedness of a principal character, and that such items as salary and interest, when forgiven, must be regarded as taxable income. , cert. den. ; ; ; ; ; cf. . The case of , affd. , relied upon by petitioner, must be considered as limited in its effect by these *507 later decisions, in which this precise distinction has been more closely examined. Therefore, in the instant case, the cancellation of indebtedness would constitute a contribution to capital to the extent to which the indebtedness forgiven comprised items of a principal nature, while to the extent that the indebtedness comprised items such as salary and interest, which may have been deducted from petitioner's gross income for prior years and a tax benefit thus enjoyed by petitioner, the cancellation would constitute taxable income to petitioner in the amount thereof. However, we have searched the record in vain for some intimation of the nature of the indebtedness so forgiven, in an effort to determine whether the regulation is applicable to the instant case, and, if so, to what extent. There is a complete lack of evidence as to the nature and origin of the indebtedness forgiven, and we cannot, in the absence of such evidence, say that the presumption of correctness of the Commissioner's determination of deficiency has been overcome. Accordingly, we conclude that the cancellation of indebtedness in the instant case constituted taxable income to petitioner. It therefore becomes *508 necessary to determine to what extent taxable income was realized by petitioner as a result of the transactions. We think the facts of this case bring it within the rule announced in , to the effect that, where a debtor is insolvent before, but solvent immediately after and because of the cancellation of indebtedness, taxable income is realized only to the extent of the value of the assets released from the claims of creditors. See also . We have set out in our findings herein the assets of petitioner at the time of the cancellations here involved and their fair market value, together with its liabilities, excluding the obligations cancelled. As to the fair market value of the physical assets the testimony of petitioner's witnesses was competent and uncontroverted, and we have found the fair market value of petitioner's cabs in conformity thereto. However, petitioner has made one contention upon this general subject of valuation with which we cannot agree. This contention is that its claim against the Transfer Co. in the amount of $3,433.00 was worthless *509 on December 31, 1936, and should not be considered in any amount as an asset of petitioner. There is no evidence in the record as to the financial condition of the Transfer Co. other than the testimony of petitioner's president that it was bad prior to the cancellations in question, and the testimony of petitioner's accountant that "under the conditions as (he) knew it of the Transfer Company", the account had no value. We do not know the amount of the assets or liabilities of the Transfer Co. or any other fact concerning it by which we can form an independent opinion as to whether the account was of value. Therefore, in view of the burden of proof which is upon petitioner we have concluded that this item should be considered as an asset of petitioner with a value equivalent to its face amount. See ; . Respondent's contention that the solvency or insolvency of petitioner before and after the cancellations of the indebtedness must be determined solely by the book value of petitioner's assets without regard to their fair market value is wholly without *510 merit. We therefore hold that the cancellation resulted in taxable income to the petitioner to the extent of $5,186.15. Decision will be entered under Rule 50. [Opinion on reconsideration, holding to the contrary, immediately follows.
Footnotes
1. Vacated April 6, 1943. For opinion on reconsideration, see which follows.↩
1. Art. 22(a)-14. Cancellation of indebtedness. - The cancellation of indebtedness, in whole or in part, may result in the realization of income. If, for example, an individual performs services for a creditor, who in consideration thereof cancels the debt, income in the amount of the debt is realized by the debtor as compensation for his services. A taxpayer realizes income by the payment or purchase of his obligations at less than their face value. (See article 22(a)-18.) If a shareholder in a corporation which is indebted to him gratuitously forgives the debt, the transaction amounts to a contribution to the capital of the corporation. Income is not realized by a taxpayer by virtue of the discharge of his indebtedness as the result of an adjudication in bankruptcy, or by virtue of a composition agreement among his creditors, if immediately thereafter the taxpayer's liabilities exceed the value of his assets.↩